```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KIMBERLY BROWN,                 :
                                :    CIVIL ACTION
            Plaintiff,          :    NO. 05-4495
                                :
       v.                       :
                                :
THE BOEING COMPANY,             :
                                :
            Defendant.          :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JANUARY 9, 2007

      This a race discrimination and retaliation case brought under 42 U.S.C. § 1981. Plaintiff Kimberly Brown was employed by Defendant The Boeing Company (Boeing) in its human resources (HR) department in its Ridley Park, Pennsylvania, offices from October 1993 to October 25, 2002, when she was terminated in connection with a reduction-in-force (RIF). Brown, an African-American woman, claims she was terminated as a result of race discrimination and/or retaliation for participating in the in-house racial discrimination complaint of another Boeing employee. Boeing claims Brown was terminated because of her low empirical scores in her RIF evaluation.

      For the reasons that follow, the Court will grant Boeing's motion for summary judgment.

I.  FACTS

The facts provided below are largely uncontested.  If a fact or allegation is contested, it is so noted, and it is viewed in the light most favorable to Plaintiff.

    A.  Brown's Positions at Boeing

Brown was employed by Boeing in clerical-type positions from October 1993 to June 1998, when she was laid off in a RIF.  She was rehired in September 1999 as a technical services specialist and performed similar duties.  (Her title from 1993 to 1998 is unclear.)  In 2000, she applied for and received a position in the organization and people development (OPD) division of the HR department.  Although the OPD division was responsible for facilitating employee training, Brown was responsible solely for coordinating vendor training.  She performed mostly clerical duties, such as processing request forms and ensuring prompt payment to external vendors.  Her manager in the OPD division was Randy Schmidt.

In early 2002, Boeing eliminated Brown's position in the OPD division for business reasons, namely that the processing of training requests was decentralized and became the responsibility of the individual organizations.  Brown does not refute Boeing's assertion that this elimination of her position was non-discriminatory.  As a result of this business restructuring,

Brown was still in the OPD division but had no assigned duties. Boeing claims it "endeavored to find suitable work for [her] within the Human Resources Department." Def.'s Mem. at 6.

In late March 2002, Brown was transferred to the equal employment opportunity (EEO) group, under the direction of Dawn Diebler. In mid-April, Diebler and Schmidt agreed that Brown should return to the OPD division. Boeing claims that Deibler was not satisfied with Brown's work product or attitude; Brown claims that she asked Diebler to train her in her new position, but that Diebler refused to do so.

On April 19, 2002, Brown returned to the OPD division in the position of "employee advocate." She alleges that the position did not exist and that she was "assigned virtually no duties." Compl. ¶ 11. "Soon thereafter"--she does not give a date--she was transferred to the position of "human resources generalist 2." Id. ¶ 12. She alleges that she was given only clerical duties under this position.

Brown's responsibility was now to "develop training metrics to determine the effectiveness of the Frank and Howard management training forum." Def.'s Mem. at 7-8. According to Schmidt, Brown did not perform well in this role.

In June 2002, the HR department was reorganized into customer cluster teams. Instead of specialists, employees within each cluster were to be generalists, "expected to be able to

3

learn and address a variety of customer concerns." Def.'s Mem. at 9. Brown was assigned to Team A, under the direction of Linda Haagen, who had been recently promoted to management. Brown had the least amount of experience of the employees in her team. In mid-July 2002, Haagen began to train Brown for her new duties as an HR generalist. Brown was allegedly not receptive to this training. In late August, she was informed that she was being terminated.

   B.   Boeing's "Redeployment Selection Process" (RSP)[1]

In January 2002, the HR department was determined to have a surplus of labor and underwent a redeployment selection process (RSP), which entailed identifying employees for termination. Each manager in the department rated each of his or her employees in ten categories, with scores of one, three, or five. Brown was ranked by her manager Randy Schmidt. The managers then met. Managers who did not rate an employee but nevertheless had reason to know that employee's work were allowed to voice their opinions about the fairness of the direct manager's score. Employees with the same or similar job grade were then ranked according to their RSP scores.

   Brown received a score of 24, which placed her fifteenth

---

[1] RSP seems to be Boeing's acronym of choice for what is commonly referred to as a "reduction-in-force" (RIF).

out of twenty-one employees in her group.  Of the six employees with lower scores, five were selected for termination.[2]  Of those five, three were Caucasian and two were African-American.  Brown was not selected for termination at this point.

However, the January 2002 RSP did not itself result in terminations.  Apparently, Tara Robinson, who was also an HR employee and an African-American woman, initiated a complaint that the RSP itself was discriminatory.  Boeing then undertook a review of the RSP "to ensure that it was done in a fair and non-discriminatory manner."  Def.'s Mem. at 5 n.2.  In April 2002, Boeing conducted an RSP with modified categories (now eight instead of ten).  Brown received a score of 16, which placed her at the bottom of the totem tied with two other employees.  Instead of selecting Brown for termination, Boeing decided to terminate those employees initially selected for termination under the January 2002 RSP.

On August 2, 2002, the HR department was again identified for downsizing.  As part of the August 2002 RSP, Linda Haagen, Brown's manager at the time, gave her a total score of 10 on the eight designated categories.  Brown was ranked last on the totem.  Along with Saundra Falcone, a white female, Brown was terminated on August 25, 2002, effective October 26, 2002.  In total, ten HR

---

[2] The one employee who was not selected for termination was Vivian Jones, an African-American woman.

employees (including Brown) were terminated in connection with the January, April, and August 2002 RSPs.

### C. The Tara Robinson Race Discrimination Investigation

Brown alleges she was fired in retaliation for her role in the investigation of Tara Robinson's discrimination complaint.

Although selected for "redeployment" as part of the January 2002 RSP, Robinson was moved to a different position within Boeing instead of being fired. Nevertheless, Robinson filed a complaint of race discrimination associated with the RSP. (It is unclear whether she filed her complaint before or after she was transferred.) Her complaint was investigated by an HR employee located in Wichita named Donnis McPhaul, an African-American woman. McPhaul interviewed over twenty employees in the Ridley Park HR department, including all African-American employees.

Brown initially declined to attend her interview with McPhaul, but she relented when the director of the HR department ordered her to do so. Brown claims she told McPhaul that she did not think that Boeing treated minorities fairly and that she was reluctant to even participate in the internal investigation because she had heard that Boeing retaliated against employees who did so. Brown sent two emails to McPhaul in April 2002 expressing her fear that she was being retaliated and/or discriminated against.

6

Boeing claims that Brown was not particularly helpful in her interview with McPhaul; Brown testified at her deposition that she never witnessed anything inappropriate between Robinson and her superiors. Boeing also claims that none of Brown's relevant managers--Schmidt, Diebler, or Haagen--knew what Brown told McPhaul. McPhaul also interviewed Vivian Jones, the one employee rated lower than Brown who was not laid off in January 2002.

McPhaul interviewed seven African-American employees as part of her investigation (including Brown and the complainant, Robinson). Of those seven, three were laid off (including Brown). Brown was the only one of the three newly selected for termination; the other two were apparently selected for termination following the January 2002 RSP.

### D.  The Special Category Review

According to Boeing's RSP Guidelines (Pl.'s Mem. Ex. A), after the initial RSP, the HR department is required to undertake a "special category review" for certain employees who are members of protected classes, including racial minorities. Boeing's internal memo on special category reviews (Pl.'s Mem. Ex. B) details the procedures for the review, namely the positions of the managers involved and the documentation the review committee must compile and produce.

The committee would consist of the senior equal employment

opportunity (EEO) manager, an EEO manager from HR, a personnel representative, and the employee's direct manager.  The same four people who were present at the August 2002 RSP meeting and signed Brown's RSP totem form would have comprised Brown's special category review committee.  Pl.'s Mem. at 8; Def.'s Reply at 4.

According to the special category review memo, the special committee would also examine additional documentation that was not necessarily reviewed for the initial RSP, including the employee's employment "folder" and her past evaluations.  Relevant here, Brown asserts that a special committee would have seen Brown's reports of discrimination and/or retaliation in her folder.  However, both Brown and McPhaul stated in their depositions that the Robinson investigation was confidential; Boeing asserts that no record of Brown's involvement with the investigation was placed in her employment folder.[3]

II. DISCUSSION

   A. <u>Summary Judgment Standard</u>

   Summary judgment is appropriate only when "the pleadings,

---

[3] Brown tries to have it both ways.  On the one hand, she asserts that Haagen knew about her complaints to McPhaul in the course of the Robinson investigation and retaliated against her for them.  On the other hand, she asserts that none of the managers who completed her August 2002 RSP, including Haagen, knew about her complaints and, had Haagen and the other members of the never-composed special committee met for the special category review, they would have seen these complaints and might have determined that the RSP was in some way discriminatory.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 305-06 (3d Cir. 2001) (citing Anderson, 477 U.S. at 248). "Although the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must establish the existence of each element of his case." Id. at 306 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

In the employment discrimination context, once a plaintiff has made out a prima facie case, she "may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination

was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

    B.  Application of Summary Judgment Standard

Both race discrimination and retaliation claims are governed by the familiar McDonnell Douglas burden-shifting analysis.[4] Pamintuan v. Nanticoke Memorial Hosp., 192 F.3d 378, 385 (3d Cir. 1999) (race discrimination); Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995) (retaliation); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (setting forth the framework).

Brown must first establish a prima facie case. If she makes this showing, the burden shifts to Boeing to state a legitimate, non-discriminatory or non-retaliatory reason for its action. Finally, Brown must then prove that Boeing's proffered reason is pretext for discrimination or retaliation. Pamintuan, 192 F.3d at 385-86; Johnson v. Women's Christian Alliance, 76 F. Supp. 2d 582, 585 (E.D. Pa. 1999) (Robreno, J.).

---

[4] There is no allegation here that Plaintiff has direct evidence of discrimination. Cf. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination.").

10

1.  Race Discrimination

To make out a prima facie case for race discrimination, Brown must make four showings: (1) that she is a member of a protected class, (2) that she is qualified for her position, (3) that she has suffered an adverse employment action, and (4) that she suffered such action under circumstances giving rise to an inference of discrimination.  Anderson v. Consol. Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002); Simpson v. Kay Jewelers, 142 F.3d 639, 644 n.5 (3d Cir. 1998).  In reduction-in-force cases, the fourth element is relaxed, Torre v. Casio, Inc., 42 F.3d 825, 831 (3d Cir. 1994), and instead "the plaintiff must show that the employer retained 'unprotected workers.'"  Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 234 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).

In order to establish an inference of causation in a RIF situation, Brown must point to a "comparator," a similarly situated, non-protected class member who was retained as an employee.  Anderson, 297 F.3d at 250; Smith v. Thomas Jefferson Univ., 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006) (Padova, J.).[5]  Brown has not identified another employee who should have

---

[5] Although Anderson and Smith are both age discrimination cases, there is no reason not to impute this requirement into the race discrimination context.  Courts have not been hesitant to intermingle age, race, and gender discrimination analyses.  E.g., Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 n.4 (3d Cir. 1999).  And at oral argument, counsel for both parties raised no objection to applying the comparator requirement here.

11

been terminated but was not. Def.'s Mem. at 18; Transcript of Deposition of Kimberly Brown, Def.'s Mem. Ex. B., at 144-45, 224-25. Under these circumstances, there can be no race discrimination if Boeing did not retain a similarly situated Caucasian employee.

Boeing is entitled to summary judgment on the race discrimination claim.[6]

---

[6] Interestingly, although Plaintiff's counsel conceded at oral argument that Plaintiff's race discrimination claim was "not strong," he hinged his argument on the fact that Boeing did not follow its own internal procedures by providing Brown, as a minority employee slated for termination, with a "second look" to ensure that Boeing was in compliance with applicable anti-discrimination laws.

Boeing did fail to strictly follow the procedures in its RSP manual. However, it had good reason for this failure: the same HR managers who would have performed the "second look" are the ones who took the "first look." It is implausible that the four people who caucused for the initial RSP would determine later, in their special committee role, that, in their ordinary RSP role, they discriminated against Brown.

Indeed, Boeing did not conduct a special category review for any HR employee slated to be terminated in connection with any of the 2002 RSPs. See Transcript of Deposition of George Lincoln, Def.'s Reply Ex. 1, at 51. Brown cannot show that Boeing discriminated against her by not giving her a special review if none of the other employees in protected classes who were being laid off got special reviews either.

Boeing's failure to strictly follow its internal procedures does not raise an inference of discrimination. Bray v. Marriott Hotels, 110 F.3d 986 (3d Cir. 1997), is not to the contrary. In Bray, the Third Circuit held that Marriott's failure to follow its own internal procedures for promotions, namely giving preference to employees already at that particular hotel, was evidence that its proffered reason for its action was pretext. In Bray, Marriott's promotion of an outside-that-hotel employee, in contravention of its own internal procedures, was evidence of

12

2. <u>Retaliation</u>

A prima facie case of retaliation requires a showing that (1) Plaintiff engaged in a protected activity, (2) Plaintiff suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).  Although the causal link is usually shown through close temporal proximity, it can also be shown through "circumstantial evidence of a 'pattern of antagonism' following the protected conduct."  <u>Id.</u> (quoting <u>Robinson v. Se. Pa. Transp. Auth.</u>, 982 F.2d 892, 895 (3d Cir. 1993)).  The Court examines the evidence as a whole to determine whether such an inference exists.  <u>Id.</u>

The second criterion is not in dispute: Brown was terminated, an obvious adverse employment action.  Although the Brown did engage in a protected activity, the Court ultimately concludes that there is no causal connection between Brown's termination and any protected activity.

a. <u>Brown engaged in a protected activity.</u>

A Title VII retaliation charge can be pursued under either

---

discrimination toward that plaintiff.  Here, Boeing's failure to follow its own procedures cannot raise an inference of discrimination because there is no comparator who kept his or her job in contravention of Boeing's procedures.

13

the participation clause or the opposition clause.[7]  The participation clause prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3.  The opposition clause prohibits an employer from retaliating against any employee "because he has opposed any practice made an unlawful employment practice by" Title VII.  Id.

A plaintiff's participation in an employer's internal, in-house investigation, so long as no formal charge has been filed with the EEOC, is ordinarily not considered a protected activity under the participation clause, even if the plaintiff is required by her employer to participate in the investigation.  See Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 554-55 (E.D. Pa. 2005) (Buckwalter, J.); Tuthill v. Consol. Rail Corp., 1997 WL 560603, at *4 (E.D. Pa. Aug. 26, 1997) (Shapiro, J.).  Here, although Brown was required to participate in the Robinson investigation, there was no EEOC charge filed, and therefore her activity is not covered by the participation clause.

Regardless of whether Brown satisfies the participation requirement, her involvement in the Robinson investigation does satisfy the opposition clause.  In Washco, the plaintiff told the

---

[7] Although this is a § 1981 case, not a Title VII case, the analyses are identical.  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).

14

internal investigator that the manager treated an African-American employee differently than other employees.  402 F. Supp. 2d at 551.  The court held that the plaintiff's statements were considered protected opposition because the relevant manager knew that the plaintiff had been interviewed in connection with the race discrimination complaint, even if he did not know the substance of what the plaintiff had told the investigator.  Id. at 551, 556.  Here, Brown opposed Boeing's alleged discriminatory practice by stating during the investigation, for example, that she had "seen a lot of unfair treatment of minorities."  Pl.'s Mem. Ex. D at 3.

Brown's statements to McPhaul during the course of the Robinson investigation constitute a protected activity under the opposition clause, and therefore satisfy the first criterion.

           b.   There is no causal connection between the protected activity and the termination.

Brown has not established a causal connection, either temporally or otherwise, between her complaints to McPhaul about race discrimination and her termination in connection with the RIF over four months later.  Brown gave statements in the Robinson investigation on March 28, 2002, wrote emails to McPhaul in April 2002, and was ranked in connection with the August 2002 RSP on August 2, 2002.  The protected activities occurred three

to four months prior to the allegedly retaliatory RSP.

Time periods as short as two months, without additional evidence, are not "unnecessarily suggestive" to demonstrate causation.  See Washco, 402 F. Supp. 2d at 560 (five months); Zappan v. Pa. Bd. of Probation & Parole, 2002 WL 32174230, at *10 (E.D. Pa. Nov. 25, 2002) (McLaughlin, J.) (two months); Pritchett v. Imperial Metal & Chemical Co., 1997 WL 570929, at *4 (E.D. Pa. Sept. 8, 1997) (Waldman, J.) (two months).  Here, the three- to four-month period between the participation in the protected activity and the adverse employment action, in the absence of any other supportive evidence, raises, at best, a weak inference of causation.

Brown's temporal proximity argument is fatally undermined by the fact that Boeing did not terminate her in connection with the April 2002 RSP, which occurred less than one month after her statements in the Robinson investigation and in which she was tied with two other employees at the bottom of the totem. Therefore, any inference of discrimination arising from the three- to four-month temporal connection is cancelled by the fact that if Boeing had wished to retaliate against Brown, it need not have waited until August to do so.

Aside from the temporal proximity argument, Brown also tries to tailor her argument to fit the "pattern of antagonism" language from the Third Circuit's Kachmar and Robinson cases.

16

This effort is unavailing.  In her brief, she repeatedly cites to her own deposition testimony to support her argument that she felt she was being retaliated against by Diebler.  See Pl.'s Mem. at 20.  She provides no evidence for this point, though, aside from her own beliefs that she was being discriminated against. "Although there is no rule of law that the testimony of a discrimination plaintiff standing alone can never make out a case of discrimination that could withstand a summary judgment motion, a plaintiff's belief alone that she is a victim of discrimination is not enough to meet her burden of proof."  Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 379, 390 (E.D. Pa. 2001) (Joyner, J.).

Finally, Brown presented no evidence that raises a genuine issue of material fact that Haagen was aware of Brown's opposition to Boeing's allegedly discriminatory practices in the course of the Robinson investigation.[8]  If the employer is not aware of the protected activity, there can be no charge of retaliation.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 505 (3d Cir. 1997).

Brown has failed to show a temporal connection or a pattern of antagonism, or a combination of both, sufficient to establish a prima facie case of retaliation.  Boeing is therefore entitled

---

[8] Even though Plaintiff's counsel took Haagen's deposition, Plaintiff presented no evidence that Haagen was aware of Brown's opposition.

to summary judgment on the retaliation claim.

III.  CONCLUSION

    Boeing's motion for summary judgment will be granted.

```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KIMBERLY BROWN,                 :
                                :    CIVIL ACTION
            Plaintiff,          :    NO. 05-4495
                                :
      v.                        :
                                :
THE BOEING COMPANY,             :
                                :
            Defendant.          :
```

<u>ORDER</u>

**AND NOW**, this **9th** day of **January 2007,** following a hearing on the record on January 8, 2007, it is hereby **ORDERED** that Defendant's motion for summary judgment (doc. no. 16) is **GRANTED** for the reasons stated in the accompanying Memorandum.

**IT IS FURTHER ORDERED** that Defendant's motion for leave to file a reply memorandum (doc. no. 20) is **GRANTED.**

**AND IT IS SO ORDERED.**

S/Eduardo C. Robreno

**EDUARDO C. ROBRENO, J.**

19